TRIMAINE WILSON,

      Plaintiff,

    v.

SANDRA BAPTISTE, et al.,

      Defendants.

No. 13 CV 07845

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

One morning in September 2012, plaintiff Trimaine Wilson had his employee Antoine Castile cash a check at one currency exchange and then try to cash a similar check (for the same amount) at another exchange right down the street. The currency exchanges shared a manager, whose suspicions were aroused, and the police were called. Wilson was handcuffed and his car searched. Harvey police officer Sandra Baptiste says she found two additional checks made out to Castile for $3,000 each and some marijuana in the car. Wilson was charged with deceptive practices (i.e., check kiting) and drug possession, but the charges were eventually dropped.

Wilson sued the currency exchange, its employees, the police officers, and the City of Harvey, bringing claims for false arrest, excessive force, failure to intervene, unconstitutional search and seizure, unlawful detention, conspiracy, state-law malicious prosecution, and indemnification. The currency exchange defendants'

motion to dismiss was granted and they were dismissed with prejudice, [126],[1] leaving the officers as defendants. Wilson, the officers, and the city bring cross-motions for summary judgment. Wilson moves for summary judgment on his claims for false arrest (Count I), excessive force (Count II), failure to intervene (Count III), unlawful detention (Count VI), and malicious prosecution for deceptive practices (Count VIII). The defendants move for summary judgment on all of Wilson's claims.

Wilson's summary judgment motion, [155], is denied. The summary judgment motion from the officers and the city, [128], is granted in part, denied in part. Summary judgment on failure to intervene claim (Count III) is granted in favor of officer Baptiste, and summary judgment in favor of the officers is granted on Wilson's unlawful detention and conspiracy claims (Counts VI and VII).

## I.    Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

---

[1] Bracketed numbers refer to entries on the district court docket.

## II.    Background[2]

Antoine Castile was friends with Trimaine Wilson and did snowplowing and landscaping jobs for Wilson's company, Trimaine Snow Plowing, Inc. [157] ¶¶ 1b, 10a–11a; [163] ¶ 4. Wilson usually paid Castile immediately in cash, but for over a month after his most recent job, Castile had not been paid at all—he was owed $200 to $300. [157] ¶¶ 12b, 13, 16a. On September 7, 2012 (a Friday morning), Wilson picked up Castile at his house, telling him that he was going to get paid for his most recent job. [157] ¶¶ 14–15; [163] ¶ 9. Wilson wrote out two checks from Trimaine Snow Plowing to Castile, for $1,500 each. [157] ¶ 21e; [163] ¶ 17. Trimaine Snow Plowing had a checking account with MB Financial Bank. [157] ¶ 19b; [163] ¶ 5.

Wilson drove to the 167th and Halsted Currency Exchange in Harvey, Illinois. [157] ¶ 22a; [163] ¶ 23. Castile paid a $25 fee to cash one of the $1,500 checks (check 1085) and gave Wilson the money when he returned to the car. [157] ¶¶ 22a–23a; [163] ¶ 23. Wilson did not pay Castile at that time but instead drove right down the street to another currency exchange at 159th and Halsted. [157] ¶¶ 25–26b. At the 159th exchange, Castile went in while Wilson stayed in the car. When Castile attempted to cash the second check (check 1088), the cashier (Denise

---

[2] The facts are largely taken from Wilson's response to the officers' LR 56.1 statement [157] and the officers' response to Wilson's LR 56.1 statement [163]. In responding to each other's LR 56.1 statements of fact, in many instances, the parties' denials (and motions to strike) are overbroad (in that they concern only one aspect of a given factual statement), are argumentative, or cite record evidence that does not properly controvert the factual statement. The purpose of Local Rule 56.1 is to permit the district court to identify at summary judgment which material facts are in dispute. The parties' Rule 56.1 statements (and responses) are viewed with this principle in mind. Unless otherwise noted, the facts related below are undisputed or are considered undisputed because the responding party did not properly controvert the factual statement as required by local rule.

Campos) called MB Financial and confirmed that there were sufficient funds in the account. [157] ¶¶ 27–28b.[3]

Checks for more than $500, handwritten checks, or checks from new customers had to be approved by Todd Klein, president and secretary of both the 167th and 159th currency exchanges. [157] ¶¶ 5a–5b, 29b; [163] ¶ 26. When Campos called Klein to approve check 1088, Klein realized that Castile had just been to the 167th exchange and cashed a check for the same amount. Klein believed that trying to cash similar checks for the same amount of money—within a few minutes at different exchanges—raised a "red flag," and he instructed Campos to call the police to "let them figure it out." [157] ¶¶ 31, 34a; [163] ¶¶ 27, 29. It is unclear whether Campos told Klein that the bank had reported sufficient funds; Klein testified that there was no indication either way as to whether the account had sufficient funds. [163] ¶ 28.[4]

---

[3] Wilson has a rather involved explanation for why he needed to write separate checks to Castile (and negotiate them at separate locations), when he could have made a cash withdrawal at MB Financial: Wilson claims he wanted around $2,600 in cash to buy equipment and that, for timing reasons, he preferred to go to a nearby currency exchange rather than look for an MB Financial branch. [163] ¶¶ 7–10, 15. He also claims that, as a business owner, he could not cash a business check but that an employee (Castile) could and that Castile told him the exchanges had a $1,500 cash limit (which Castile's testimony disputes). [157] ¶¶ 21e, 24a–24b; [163] ¶¶ 16, 19; [145-1] at 159–60. Because this information was never conveyed to the officers, it is not directly relevant to the issues in this case.

[4] The officers object to Wilson's use of the currency exchange defendants' judicial admissions against the officers. Judicial admissions are only binding against the party making them. *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). Although not admissible against the officers, Campos and Klein's testimony is related here as background information. Statements by Campos and Klein made to each other are hearsay if offered for their truth, and also irrelevant unless conveyed to the officers. Klein's instructions to Campos are admissible as non-hearsay.

Campos told the police dispatcher that a person had just cashed a check down the street and was attempting to cash the "same exact check" at her exchange. [157] ¶ 34b. Officer Baptiste was dispatched to the 159th exchange. Upon arriving at the exchange, she noticed Wilson seated inside his truck. [157] ¶ 37b. Baptiste entered the exchange and Campos pointed out Castile. [157] ¶ 38. Baptiste then proceeded to speak with Castile about the incident. [157] ¶ 39.

The stories diverge after this point. Officer Baptiste recalls telling Castile that the currency exchange was accusing him of presenting fraudulent checks, and she asked him to explain the situation. [157] ¶¶ 40a–40b; [163] ¶ 37. She says that Castile told her that he agreed to go with Wilson to cash some checks because Wilson owed him money for lawn work. [157] ¶¶ 41a–41b. Wilson told him to go into the 167th exchange to cash a check, which he did, and then asked Castile to cash a second check at the 159th exchange. [157] ¶¶ 42a–42b. According to Baptiste, Castile said that Wilson had written other checks for them to cash, which were in Wilson's truck. [157] ¶ 47c.[5] During this conversation, Baptiste told Castile that the exchange did not believe there was enough money to cover the second check, but he claimed not to know there were insufficient funds and stated, "All I know was that we were going from place to place cashing checks." [157] ¶ 43a. Officer Baptiste then asked Castile to stand in a corner and called for assistance—she was concerned about handling two males alone, and she had noted that Wilson was

---

[5] Castile says he knew nothing about the other checks until officer Baptiste mentioned them while driving him to the station. [163] ¶ 19.

particularly large. [157] ¶¶ 45a–45c. Baptiste says that Campos told Baptiste that there could not have been enough money on the check. [157] ¶ 47d; [163] ¶ 35. Klein arrived at the exchange and recalls speaking with officer Baptiste. [157] ¶ 47e.[6]

According to Castile, however, officer Baptiste asked if he was aware that he was trying to cash a fraudulent check and if he was with anyone else. [163] ¶ 37. Castile does not recall the rest of their conversation, except that he expressed his embarrassment at being questioned in front of other people at the exchange, after which Baptiste asked him to step outside. [163] ¶ 37; [157] ¶¶ 41c–41e. Castile claims that he did not know that Wilson had two other checks (for $3,000) written out to him. [157] ¶ 47c; [163] ¶ 19. Castile did not recall Baptiste speaking with Campos after his identification, although he did recall Baptiste speaking to someone in the parking lot, who he believed to be the exchange manager (Klein). [157] ¶¶ 44, 47d; [145-7] at 44–45. Campos claims that, beyond the initial identification of Castile, she did not speak with Baptiste any further. [157] ¶ 47d; [163] ¶¶ 35, 46.

Officer Rife was dispatched to the 159th exchange.[7] Rife ordered Wilson out of his truck and placed him in handcuffs. There are competing versions of how this

---

[6] Wilson objects to this testimony because the officers denied Wilson's request to admit that Klein spoke with either officer before Wilson's arrest. Unlike an admission, the officers' denial does not conclusively establish whether or not Klein spoke to them before the arrest. The effect of the denial is to dispute Klein's testimony, but it does not render Klein's testimony inadmissible.

[7] Wilson argues that officer Rife was responding to the original dispatch, but merely arrived later than Baptiste. The evidence Wilson cites, however, does not support this assertion. In particular, the currency exchange defendants' responses to Wilson's requests to admit are not binding against the officers, *Keller*, 58 F.3d at 1199 n.8, and they do not explain how the

occurred. According to Wilson, Rife arrived, immediately got out of his police car, and approached Wilson's truck with his gun drawn and pointed at Wilson. [157] ¶ 53a; [163] ¶ 38. Wilson says Rife ordered him to get out and put his hands on the truck. [157] ¶ 54a; [163] ¶ 38. When Rife was close to Wilson, he holstered his weapon, shoved Wilson against the car, kicked his legs apart, and searched him. [157] ¶ 54b; [163] ¶ 38.[8] Then Wilson was placed in Rife's police car. [157] ¶ 54c. Wilson testified that Baptiste was exiting the currency exchange with Castile while these events transpired. [157] ¶ 55; [163] ¶ 39. Similarly, Castile recalled observing, when he stepped outside with Baptiste, that Wilson had been placed in handcuffs by officer Rife, who was pushing Wilson and using "a bit of force." [163] ¶ 37.

Baptiste says she consulted with Rife before Wilson was placed in custody, and both Baptiste and Klein recall officer Rife speaking with Wilson prior to placing him in handcuffs. [157] ¶¶ 47e–47g.[9] Wilson is the only person to testify that officer Rife did not have his gun holstered during this incident. [157] ¶ 53c. Officer Rife recalls few, if any, details about the incident with Wilson. [157] ¶ 46d.

It is undisputed that Baptiste told Wilson and Castile that they would be taken to the police station to "straight this [situation] out." [157] ¶ 47h. While Wilson and Castile were being detained (in handcuffs), Baptiste approached

_____

currency exchange employees could have known whether Rife was responding to the original dispatch or Baptiste's later call for assistance.

[8] Wilson admits that officer Rife did not hit his head or punch his chest, but claims he had a headache and chest pain as a result of their brief encounter. [157] ¶ 56b.

[9] Confusingly, plaintiff both admits and denies that Baptiste consulted with officer Rife prior to placing Wilson into custody and claims that Rife immediately arrested Wilson upon his arrival at the currency exchange. [157] ¶¶ 46a, 47g; [171] ¶¶ 18a, 24b.

Wilson's truck. [157] ¶ 58a. The officers concede that Wilson's car was searched without his permission. [164] ¶ 28.[10] Baptiste and Wilson dispute what happened next.

According to Baptiste, Wilson asked her to retrieve his heart medication, which was in his truck's cup-holder. While getting it, she noticed an open checkbook with checks sitting on the top of the dashboard. [157] ¶¶ 58b, 59a. The checkbook (which has three checks per page) contained two checks for $3,000 each from the Trimaine Snow Plowing bank account, payable to Castile. [157] ¶ 59c. Baptiste claims these checks were plainly visible from outside the truck. [157] ¶ 59e. She says she also found a pill bottle in the truck's cup-holder, in plain view, and the pill bottle contained cannabis in a clear plastic bag. [157] ¶¶ 60a–60b; [163] ¶ 51. Klein also claims he observed Baptiste finding marijuana, pill bottles, and drug paraphernalia in Wilson's truck. [157] ¶ 60c.

According to Wilson, however, he adamantly objected to a search of his truck. [157] ¶ 58b. He claims that the checkbook binder was closed and points out that that the police evidence label signed by Baptiste indicates that the binder was "on subject's lap." [157] ¶ 59a; [163] ¶ 50.[11] Wilson also testified that there was no pill bottle or marijuana in his truck. [157] ¶ 60a; [163] ¶ 51. Instead, he claims that

---

[10] Defendants initially denied this statement but admit it in a later 56.1 response. *See* [163] ¶ 49; [164] ¶ 28.

[11] Wilson also argues that his mother, who has power of attorney, mistakenly wrote out the two $3,000 checks, which he left in the checkbook and intended to void. [164] ¶¶ 5, 7–8. There is no evidence, however, that this information was ever conveyed to the officers at the time of the arrest, and it is therefore irrelevant to the determination of probable cause.

while at the police station, his brother brought a bag of 10 to 12 pill bottles, including a bottle of anxiety medicine, which was retained by the Harvey police as "evidence." [157] ¶ 60a; [163] ¶¶ 52–53.

It is undisputed that Wilson was taken to the Harvey police station, where he was booked and charged for deceptive practices on September 7th, but he was not booked and charged for drug possession until September 8th. [163] ¶¶ 62, 72. Wilson received his probable cause hearing on September 9th, at which there was a finding of probable cause. [163] ¶¶ 73, 75. His criminal case continued until November 2012, when the assistant state's attorney dismissed all charges by *nolle prosequi*. [163] ¶¶ 77–79.

## III. Analysis

### A. False Arrest

Wilson and the officers both move for summary judgment on his false arrest claim against officers Baptiste and Rife (Count I). A plaintiff cannot prevail on a false arrest claim if probable cause existed for the arrest. *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* "Determining whether an officer had probable cause to arrest entails a purely objective inquiry;

the officer's subjective state of mind and beliefs are irrelevant." *Id.* (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).[12]

"Due to qualified immunity's protection, an officer needs only 'arguable' probable cause." *Huff v. Reichert*, 744 F.3d 999, 1007 (7th Cir. 2014). Arguable probable cause exists when a reasonable officer in the same circumstances and with the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law. *Id.*; *Tebbens v. Mushol*, 692 F.3d 807, 821 (7th Cir. 2012) ("[T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law.") (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The existence of probable cause (or arguable probable cause) depends on the elements of the predicate criminal offense, as defined by state law, *Abbott*, 705 F.3d at 715 (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)), although "an arrest can be supported by probable cause that the arrestee committed any crime, regardless of the officer's belief as to which crime was at issue." *Id.* (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). Also, probable cause does not impose a "more-likely-than-not" standard on each and every element of the predicate crime.

---

[12] The defendants also argue that Baptiste had reasonable suspicion to detain Wilson, once Castile identified him, and that she had probable cause to arrest him after she discovered the additional $3,000 checks and cannabis. [130] at 9–10. The facts are disputed, however, as to whether Castile told Baptiste about any additional checks and whether the checks and cannabis were in plain view.

*Hawkins v. Mitchell*, 756 F.3d 983, 994–95 (7th Cir. 2014) (citing *Adams v. Williams*, 407 U.S. 143, 149 (1972)).[13]

Here, genuine issues regarding the facts and circumstances known to the arresting officers at the time of the arrest preclude summary judgment on the false arrest claim for either Wilson or the officers. The inquiry here is whether the facts known to officers Baptiste and Rife, at the time of the arrest, would warrant a reasonable person to believe (even if mistakenly) that Wilson was engaged in check kiting. It is undisputed that the cashier, Campos, told the police dispatcher that Castile had just cashed a check at the currency exchange down the street and was attempting to cash the "same exact check" at the second currency exchange. [157] ¶ 34b. Wilson argues that Baptiste cannot currently recall any specific information relayed by the dispatcher (other than to meet the complainant at the currency exchange). But, under the collective knowledge doctrine, the dispatcher's knowledge is imputed to Baptiste and Rife. *Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir. 1998). Moreover, the record is undisputed that after Campos pointed out Castile, Baptiste immediately spoke to him about cashing fraudulent checks and if he was with anyone. The only reasonable inference is that Baptiste, by that time, had

---

[13] The Illinois Deceptive Practices Act makes it a crime for an individual to issue a check—knowing that it will not be paid by the depository bank and with intent to defraud—either to pay for property, labor or services or to make a payment of an amount owed in a credit transaction. *Marks v. Carmody*, 234 F.3d 1006, 1009 (7th Cir. 2000) (citing 720 ILCS § 5/17-1(B)(d) & (e)); *People v. Butcher*, 257 Ill.App.3d 1051, 1054–55 (2d Dist. 1994). Other than deceptive practices and possession of cannabis, the officers identify no offense for which probable cause or arguable probable cause might have existed.

received information that the situation at the currency exchange involved possible check kiting. It is also undisputed that Castile said that he was with Wilson.

At this point in time, a reasonable officer would have been aware that Castile, accompanied by Wilson, attempted to cash a similar check at two nearby currency exchanges within a short period of time. Although certainly suspicious, based on these undisputed facts alone, even a reasonably mistaken officer could not have believed there was probable cause to arrest *Wilson* for check kiting, especially without more information indicating whether Wilson was actually involved in Castile's check-cashing attempts, or whether there were insufficient funds. In particular, Wilson points to evidence in the record suggesting that none of the currency exchange employees told Baptiste that there were insufficient funds and that they never gave Baptiste any more information beyond the original dispatch.

Facts that would tend to show arguable probable cause are disputed, including: whether Castile knew about the two $3,000 checks in the truck and told Baptiste that Wilson planned to cash them, or whether he first learned about the checks when Baptiste told him about them on the way to the police station; whether Wilson asked Baptiste to retrieve his medication in the car and whether the checkbooks with additional $3,000 checks to Castile were in plain view; and whether there was cannabis visible in a pill bottle in Wilson's cup-holder. These disputed facts preclude summary judgment for the defendant officers.

Wilson, however, is not entitled to summary judgment on this claim either. In assessing Wilson's motion, the facts are viewed in the light most favorable to the

officers. The officers have identified evidence in the record suggesting that Castile told Baptiste that he and Wilson were going around cashing checks and that there were additional checks in the car that they intended to cash. There is also evidence (although disputed) suggesting that Campos told Baptiste that Wilson's account had insufficient funds and that Wilson asked her to retrieve medication from his car, when she discovered the additional $3,000 checks in plain view on the dashboard and a pill bottle that contained cannabis. [157] ¶¶ 47d, 58b–60c. If a fact-finder were to determine that an officer believed that two men were negotiating and attempting to negotiate multiple checks made out to the same person at different currency exchanges (within minutes), and there was reason to suspect insufficient funds in the account, the officers would have had, at a minimum, arguable probable cause to arrest Castile and Wilson for check kiting (i.e., issuing or attempting to issue a check while knowing that it will not be paid by the depository bank and with intent to defraud). *See Marks*, 234 F.3d at 1009. And if Baptiste in fact saw marijuana in the pill bottle, she had probable cause to arrest Wilson for possession of cannabis.

The parties dispute the material facts of what the officers knew and saw at the time of Wilson's arrest, thus precluding summary judgment. *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013). Summary judgment on the false arrest claim is denied for all movants.

### B.    Excessive Force

Wilson and the officers both move for summary judgment on the excessive force claim against officer Rife (Count II). An officer's alleged use of excessive force

during an arrest is evaluated under the Fourth Amendment's objective-reasonableness standard, *Abbott*, 705 F.3d at 724 (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)), and "the reasonableness of the force used depends on the totality of the facts and circumstances known to the officer at the time the force is applied." *Id*. (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985)). "An officer's use of force is unreasonable if in light of all those circumstances at the time of the seizure, the officer used greater force than was reasonably necessary to effectuate the seizure." *Williams v. Indiana State Police Dep't*, 797 F.3d 468, 473 (7th Cir. 2015) (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Qualified immunity, however, "affords enhanced deference to officers' on-scene judgments about the level of necessary force." *Abbott*, 705 F.3d at 725. To defeat qualified immunity, the plaintiff must demonstrate both that excessive force was used and that it was objectively unreasonable for the officer to believe that the force was lawful—i.e., that the right to be free from the particular use of force under the relevant circumstances was "clearly established." *Abbott*, 705 F.3d at 725.

Disputed material facts preclude summary judgment for either Rife or Wilson. The level of force used by officer Rife is disputed, as Wilson testified that Rife pulled his gun while ordering him to exit the car but other witnesses testified that they never saw Rife's gun unholstered. Rife is also not entitled to qualified immunity because pointing a gun can constitute excessive force if circumstances show no reasonable threat of death or of serious physical injury to the officer or others. *See Baird v. Renbarger*, 576 F.3d 340, 345 (7th Cir. 2009) ("[G]un pointing

when an individual presents no danger is unreasonable and violates the Fourth Amendment."). Rife argues that his alleged use of force is similar to the officers in *Rebolar ex rel. Rebolar v. City of Chicago*, 897 F.Supp.2d 723 (N.D. Ill. 2012), who pointed guns at the plaintiff for a few minutes until he was handcuffed but who were held not to have used excessive force. *Id.* at 736–37. The officers in *Rebolar*, however, reasonably (albeit mistakenly) identified the plaintiff as a suspected car burglar in mid-theft, and the plaintiff failed to show his hands after repeated orders to do so. Although Wilson is a large man, there is no evidence that Rife suspected Wilson was particularly dangerous, and there is nothing in the record indicating that Wilson was resisting Rife's orders.[14]

Given the factual disputes, none of the movants are entitled to summary judgment.

### C.    Failure to Intervene

Even under Wilson's version of events, however, officer Baptiste cannot be held liable for failure to intervene (Count III). To prevail, Wilson must show that Baptiste "had reason to know excessive force was being used and had a realistic opportunity to prevent the harm from occurring." *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008) (internal marks omitted). Wilson and Castile both

---

[14]  The officers argue that under *United States v. Smith*, "officers conducting an investigatory stop may approach with guns drawn and handcuff a suspect without transforming the stop into an arrest." 697 F.3d 625, 632 (7th Cir. 2012). In *Smith*, however, the officers were pursuing "armed and dangerous" bank robbers. The Seventh Circuit has cautioned "the acceptability of handcuffs in some cases does not signal that the restraint is not a significant consideration in determining the nature of the stop." *Ramos v. City of Chicago*, 716 F.3d 1013, 1018 (7th Cir. 2013).

testified that Baptiste was leaving the currency exchange with Castile while Wilson was placed in handcuffs and pushed against the car (and by which time officer Rife had allegedly holstered his gun). The alleged contact between Rife and Wilson was not so prolonged that Baptiste, while exiting the currency exchange, could "have undertaken any action to 'un-do' any alleged constitutional violation," or to "have a realistic opportunity to intervene" in this situation. *Lanigan v. Village of E. Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997). Even if Baptiste consulted with Rife prior to placing Wilson in custody—which Wilson's own 56.1 statements both admit and deny ([157] ¶ 47g; [171] ¶ 24b) and which tends to contradict Wilson and Castile's testimony (see [171] ¶ 24b)—there is no evidence that Baptiste knew of, or was near enough to have a realistic opportunity to intervene with, Rife's alleged treatment of Wilson while handcuffing him. Summary judgment on the failure to intervene claim (Count III) is granted in favor of officer Baptiste.

### D.    Vehicle Search and Seizure

The officers move for summary judgment on Wilson's unconstitutional search and seizure claims against them (Counts IV and V). Law enforcement officers may perform a warrantless search of a vehicle "incident to a recent occupant's arrest . . . (1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains evidence relevant to the crime of arrest." *Gibbs v. Lomas*, 755 F.3d 529, 542 (7th Cir. 2014) (quoting *Davis v. United States*, 564 U.S. 229, 131 S.Ct. 2419, 2425 (2011)). However, a warrantless search or seizure in the absence of probable cause or consent is unreasonable. *United States v. Slone*, 636 F.3d 845, 848 (7th Cir. 2011); *Huff*, 744 F.3d at 1008–09.

The officers have conceded that Wilson's car was searched without his permission. [164] ¶ 28. There are disputed material facts on the issue of probable cause, including whether Castile told Baptiste that there were more checks in the truck and whether the $3,000 checks and a pill bottle with cannabis were in plain view. Defendants' motion for summary judgment on Wilson's unconstitutional search and seizure claims is denied.

### E. Unlawful Detention

Wilson and the officers both move for summary judgment on Wilson's claim for unlawful detention (Count VI). Wilson argues that he did not receive his probable cause hearing until slightly over 48 hours after his arrest, so his detention was presumptively unreasonable. The officers argue that Wilson was detained for less than 48 hours and that they cannot be liable for unlawful detention because neither caused any alleged constitutional deprivation.

A person arrested without a warrant is entitled to a timely judicial determination of probable cause, and detentions over 48 hours are presumptively unreasonable. *Ortiz v. City of Chicago*, 656 F.3d 523, 539 (7th Cir. 2011) (citing *Country of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991)). The plaintiff bears the burden of showing any detention under 48 hours is unreasonable, but the state bears the burden of proving that specific circumstances justified a delay of over 48 hours. *Id*. However, to establish personal liability under § 1983, Wilson must show that the officers "caused the deprivation of a federal right." *Id*. (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

Crediting Wilson's version of events (as the non-movant on this claim), he has not identified any facts that would establish the individual liability of officers Baptiste or Rife for unlawful detention. Wilson argues that, according to the Harvey police "Arrest Form," he was arrested before 12:05 p.m. September 7, 2012 (a Friday). [163] ¶¶ 42–44.[15] Wilson testified that no one from the Harvey Police Station was taken to court on September 8, 2012. [157] ¶ 70b. He was taken to court on September 9th, purportedly only after demanding medical treatment from unnamed members of the police department, and he points to court records indicating that his bond hearing may not have occurred until 1:00 p.m. [157] ¶ 71; [163] ¶¶ 73–74; [154-31].

Even assuming that Wilson was arrested at 12:05 p.m. on September 7, 2012, and did not receive his bond hearing until 1:00 p.m. on September 9, 2012, Wilson has not shown that officers Baptiste or Rife played any role in delaying Wilson's probable cause hearing. Although Baptiste told Wilson on September 8th that he would not be going to court because they were short-staffed ([164] ¶ 35),[16] Wilson admits that no one held at the Harvey police station was taken to bond court that day. [157] ¶ 70b. He also testified that, prior to his September 9th hearing, unnamed persons at the police department told him that no one was going to court that day because a clerk or other people were unavailable; they later changed their

---

[15] The officers object to this fact, arguing that Baptiste testified that Wilson was detained around 12:58 p.m. or later. [163] ¶¶ 42–44. But the officers admitted that, according to the arrest form, Wilson's arrest took place at 12:05 p.m. [163] ¶ 43; [154-42] at 4, ¶¶ 18–19.

[16] Defendants initially denied this fact but admit it in a later 56.1 response. *See* [163] ¶ 66; [164] ¶ 35.

minds when he demanded medical treatment and began preparing him for court. [164] ¶ 37; [154-2] at 37. This second conversation, however, did not include Baptiste.[17] Wilson has not come forward with any evidence of Baptiste's role in causing the delay (rather than relaying information about the delay) or any role played by Rife in delaying the probable cause hearing. *See, e.g., Ortiz*, 656 F.3d at 539–40. The officers are entitled to summary judgment on this claim.

### F.    Conspiracy

The officers move for summary judgment on Wilson's conspiracy claim (Count VII). The conspiracy claim alleges that the officers conspired with Campos and Klein to violate Wilson's constitutional rights. Klein, Campos, and the currency exchange were previously dismissed from this claim ([126]), leaving only the officers as defendants. To establish conspiracy liability in a § 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights. *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

Wilson has failed to identify any evidence that the officers agreed to violate his rights, and did not even address the officers' arguments for summary judgment on this claim, despite the voluminous briefing on the parties' cross-motions for summary judgment. *See Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were

---

[17] Wilson's conversation with the unnamed persons regarding his September 9th court appearance was a different conversation than his discussion with Baptiste about court on September 8th. Wilson recalled speaking to Baptiste only on September 7 and 8. [154-2] at 8–9.

not raised in its response to the moving party's motion for summary judgment."). Moreover, there is no evidence that Campos and Klein agreed with the officers to make up a phony charge against Wilson. Summary judgment for the officers is granted on Wilson's conspiracy claim (Count VII).[18]

### G. State-Law Malicious Prosecution

Wilson seeks summary judgment on his state-law claim for malicious prosecution based on the deceptive practices charge (Count VIII). The officers and the city seek summary judgment that claim, as well as Wilson's malicious prosecution claim based on the cannabis charge (Count IX).

To establish a claim of malicious prosecution under Illinois law, Wilson must show "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Johnson v. Saville*, 575 F.3d 656, 659 (7th Cir. 2009) (quoting *Swick v. Liautaud*, 169 Ill.2d 504, 512 (1996)). "The absence of any one of these elements bars a plaintiff from pursuing the claim." *Id*. The officers reassert the probable cause argument they made regarding the false arrest claim. This argument is rejected for reasons already discussed.

The officers also argue that Wilson cannot establish malice. Malice "is proved by showing that the prosecutor was actuated by improper motives." *Fabiano v. City*

---

[18] In addition, since all of the remaining defendants are public employees, a conspiracy claim under § 1983 "has no role to play." *Scott v. City of Chicago*, 619 Fed. App'x 548 (7th Cir. 2015) (citing *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)).

*of Palos Hills*, 336 Ill.App.3d 635, 647 (1st Dist. 2002). "It is well established that a jury can infer malice from an absence of probable cause." *Williams*, 733 F.3d at 760 (citing *Aguirre v. City of Chicago*, 382 Ill.App.3d 89, 97 (1st Dist. 2008)). To defeat summary judgment, Wilson need only come forward with evidence that would permit a finding of no probable cause and permit a reasonable inference of malice. *Id*. Wilson has shown disputed material facts as to whether the officers had probable cause for his arrest. He has also presented evidence, although it is disputed and might not ultimately be credited by the fact-finder, to suggest that Baptiste trumped up the cannabis charge after he was detained at the station.

Summary judgment for all movants on the malicious prosecution claims is denied.

## IV. Conclusion

Wilson's summary judgment motion, [155], is denied. The summary judgment motion from the officers and the city, [128], is granted in part, denied in part. Summary judgment on failure to intervene claim (Count III) is granted in favor of officer Baptiste, and summary judgment in favor of the officers is granted on Wilson's unlawful detention and conspiracy claims (Counts VI and VII).

ENTER:

Manish S. Shah
United States District Judge

Date: 2/10/16