UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRIMAINE WILSON, <br><br> Plaintiff, <br><br> v. <br><br> SANDRA BAPTISTE, et al., <br><br> Defendants. | No. 13 CV 07845 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Wilson moves for reconsideration of the memorandum opinion and order on the parties' cross-motions for summary judgment. [177].[1] Wilson's summary judgment motion was denied, and the defendants' motion was granted for officer Baptiste on Wilson's failure to intervene claim (Count III) and for both officers on Wilson's unlawful detention and conspiracy claims (Counts VI and VII), but was denied as to Wilson's remaining claims.

For the following reasons, the motion to reconsider, [183], is denied.

**I.  Motion for Reconsideration**

The background of this case and the claims argued in the parties' cross-motions for summary judgment are described in the summary judgment opinion. [177]. In moving for reconsideration, Wilson asserts that he is entitled to summary judgment in his favor on his claims for false arrest, illegal search and seizure of his vehicle, unlawful detention, and malicious prosecution (Counts I, IV–VI, and VIII).

---

[1] Bracketed numbers refer to entries on the district court docket.

He also asks to vacate the grant of summary judgment for defendants on his unlawful detention and conspiracy claims (Counts VI and VII). Wilson does not seek reconsideration on the grant of summary judgment for officer Baptiste on Wilson's failure to intervene claim (Count III) or on the denial of summary judgment on his claims for excessive force and malicious prosecution for cannabis possession (Counts II and IX).

Wilson's arguments for reconsideration can be corralled into the following general categories: (1) the court applied the wrong standard for reviewing the factual record and improperly conflated facts from the parties' cross-motions, (2) the factual record showed there was no probable cause for his arrest, (3) the officers caused Wilson to be illegally detained for more than 48 hours, (4) the court erred in stating that a conspiracy claim under § 1983 had no role to play when all of the remaining defendants were public employees, (5) the officers maliciously prosecuted Wilson for deceptive practices despite realizing that there were sufficient funds in Wilson's account.

### A. Legal Standard

"Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Instead, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* at 1269. A "manifest error" occurs when "the Court has patently misunderstood a party, or has made a decision outside the adversarial

2

issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Id*.

## II. Analysis

### A. Factual Record

A footnote in the summary judgment opinion noted, in part, that the outlined background facts were "largely taken from Wilson's response to the officers' LR 56.1 statement [157] and the officers' response to Wilson's LR 56.1 statement [163]." [177] at 3 n.2. Wilson misunderstood this footnote to mean that only the *responses* to the statements of facts were considered in support of (or in opposition to) summary judgment, rather than the entirety of the parties' Local Rule 56.1 statements and responses considered together. To clarify, this footnote merely directed the reader to the docket entries conveniently containing the parties' 56.1 statements of fact and corresponding responses in a single document, rather than citing to separate docket entries for the statements and the responses. The footnote did not mean that only responses to Local Rule 56.1 statements were considered as the factual record. There was no error on this point.

Wilson also claims that the opinion improperly conflated the factual records from each side's cross-motions for summary judgment. In Wilson's view, when there are cross-motions for summary judgment, a court must decide each motion while completely ignoring the factual record developed and argued in the other cross-motion. This is incorrect. Cross-motions for summary judgment must be considered

separately in the sense that each party bears their "respective burdens on cross-motions for summary judgment." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008). This means that a court cannot assume there are no undisputed facts merely because both sides filed motions for summary judgment; denial of one cross-motion does not require granting the other motion. Instead, for cross-motions, a court must "look to the burden of proof that each party would bear on an issue of trial; we then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Cross-motions also must be viewed separately in the sense that for each motion, factual inferences are viewed in the nonmovant's favor. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015).

With these principles in mind, however, summary judgment is appropriate only when the evidence "as a whole" shows there is no genuine dispute as to any material fact—this includes evidence submitted with another party's cross-motion. *See Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 671 (7th Cir. 2011) (reviewing cross-motions for summary judgment: "Summary judgment is appropriate where the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."); *Bloodworth v. Vill. of Greendale*, 475 Fed. App'x 92, 95 (7th Cir. 2012) ("Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from

4

both motions—establishes that no material facts are in dispute."); *Smart v. Int'l Bhd. of Elec. Workers, Local 702,* 453 Fed. App'x 650, 653–54 (7th Cir. 2011) (district court was "obligated to consider" materials attached to other party's cross-motion before ruling on cross-motions) (citing, inter alia, *Las Vegas Sands, LLC v. Nehme,* 632 F.3d 526, 532 (9th Cir. 2011)); *Las Vegas Sands,* 632 F.3d at 532 ("Where the parties file cross-motions for summary judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered."). In accordance with these rules, the summary judgment opinion viewed the factual record from the cross-motions "as a whole" but viewed each motion separately with regard to burdens of proof and favorable inferences to the nonmovant. The correct standard was applied, and Wilson is not entitled to reconsideration on these grounds.

### B.  Probable Cause

The cross-motions for summary judgment on Wilson's false arrest and malicious prosecution claims were denied because there were genuine issues of material fact over whether the officers had probable cause (or arguable probable cause) to arrest Wilson for deceptive practices. Generally repeating arguments that could or should have been made at summary judgment, Wilson's arguments for reconsideration on this point do not demonstrate a manifest error of law or fact requiring reconsideration.

#### 1.  "Check Kiting"

Wilson contends that the summary judgment opinion's probable cause analysis is riddled with errors because it references "check kiting" as an alternative

5

term for the crime of "deceptive practices" under the Illinois Criminal Code, 720 ILCS 5/17-1. This argument is belated and ignores context. During summary judgment, the defendants' briefs cited Seventh Circuit authority describing activity under the Illinois deceptive practices statute as "check kiting," and the defendants referred to Wilson's deceptive practices charge as "check kiting." *See, e.g.,* [130] at 8–9; *First Nat'l Bank of Decatur v. Ins. Co. of N. Am.*, 424 F.2d 312 (7th Cir. 1970) (holding that a depositor's activity in an alleged "check kiting scheme" fell within the scope of the Illinois deceptive practices statute). Wilson responded to defendants' arguments and statements of fact without objecting to use of the term "check kiting" as incorrect. Furthermore, the opinion clearly noted that "check kiting" was being used as an alternative term for deceptive practices and explained that the crime charged was deceptive practices, identifying the relevant statute, case law, and elements. *See, e.g.,* [177] at 1, 11 n.13, 13. Wilson's assertion that the court analyzed a "fictitious crime" is incorrect.

Relatedly, Wilson argues that the opinion did not address an element of deceptive practices, specifically the intent to defraud. But this is merely a variation on a theme raised by Wilson at summary judgment, which was his argument that the officers could not infer or prove intent without investigating the sufficiency of the funds in Wilson's account. And it remains an unpersuasive argument because the factual record was (and remains) rife with disputes about what the officers knew at the time, including information about whether Wilson's account had

sufficient funds. There is no manifest error of law or fact requiring reconsideration on these grounds.

### 2. The Officers' Knowledge

Wilson disagrees with the court's assessment that there were disputed facts about what the officers knew before arresting Wilson, which precluded summary judgment on the issue of probable cause (and therefore his claims for false arrest and malicious prosecution). Largely rehashing unsuccessful summary judgment arguments, which is inadequate support for reconsideration, *Caisse Nationale*, 90 F.3d at 1270, Wilson fails to show that there are no disputed facts about probable cause.

First, Wilson argues that the arresting officers had absolutely no information about anyone cashing any bad checks, and therefore it was completely out of line to arrest Wilson for deceptive practices. But Wilson does not dispute, even on reconsideration, that a currency exchange employee asked for police to come to the exchange, telling the police dispatcher that a man (i.e., Castile, who accompanied Wilson that morning) was attempting to cash the "same exact check" at a second currency exchange down the street from the first exchange. The opinion held that the information given to the police dispatcher could be imputed to the officers, through the collective knowledge doctrine, even if Baptiste could not recall being relayed any other information than to meet the complainant at the currency exchange. [177] at 11–12. Wilson argues that under the collective knowledge doctrine, knowledge cannot be imputed from non-officers or non-police agencies, such as the dispatcher, but the currency exchange employee called the *police*

dispatcher, part of the Harvey police agency, who then dispatched Baptiste to the scene. *See, e.g.,* [157] ¶¶ 34a–34b; [145-6] at 81–82. The police dispatcher possessed the information conveyed by the currency exchange employee.

The fact that Baptiste could only recall being told by the dispatcher to meet the complainant at the currency exchange is not dispositive of the issue of probable cause, as Wilson claims. The point of the collective knowledge doctrine is that it can rest on the *collective* knowledge of the agency, even if the arresting officer does not have personal knowledge of the express facts supporting probable cause. *See Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir. 1998) ("[T]he police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency. *In that case, the arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause.*") (emphasis in original).

There are other disputed facts about what Baptiste knew upon her arrival at the exchange and what she learned as events unfolded. Wilson admitted that upon officer Baptiste's arrival at the currency exchange, the currency exchange employee pointed to Castile, and Baptiste immediately began questioning Castile about cashing fraudulent checks. Although Wilson argues that this was nothing more than the coincidental instinct of a police officer sent to meet a complainant at a currency exchange, viewing that fact in the most favorable light to the officers,

8

there is an inference that she was given reason to suspect that Castile was trying to cash bad checks.

Even assuming that Baptiste knew nothing upon her arrival at the currency exchange, under Baptiste's version of events, she may have learned enough *after* arriving at the exchange to have probable cause to arrest Wilson for deceptive practices. She recalled telling Castile that the currency exchange was accusing him of presenting fraudulent checks; Castile explained that he was cashing these checks at Wilson's direction and that Wilson had written other checks for them to cash. During this conversation, Baptiste told Castile that the exchange did not believe there was enough money to cover the second check, but he claimed not to know there were insufficient funds. Baptiste also recalled speaking to currency exchange employees, who informed her that there could not have been enough money on the check. [177] at 5–6. Essentially, Wilson disputes the credibility of the officers' narrative, but that is an argument for trial, not summary judgment.

Wilson also argues that the officers did not speak to any employees of the currency exchange, implying that the officers could not have learned any information about the sufficiency of Wilson's funds (or lack thereof). During discovery, the officers had denied a request to admit that they spoke to the currency exchange manager. At summary judgment, and in his motion to reconsider, Wilson contends that this denial must be treated as an admission that the officers never spoke with the manager. Wilson cites no authority for this proposition however, only Federal Rule of Civil Procedure 36, which explains that the three appropriate

9

responses to a request to admit are an admission, denial, or lack of knowledge. But Rule 36 does not support Wilson's argument, and instead merely reflects that denials must "fairly respond to the substance of the matter." To the extent Wilson argues that the officers' denial of his request to admit was frivolous, that issue is not appropriate for summary judgment but rather goes to the credibility of the officers' testimony that they spoke with the currency exchange employees—a matter for resolution at trial.

Similarly, Wilson finds fault with the summary judgment opinion for holding that admissions by the currency exchange defendants—specifically, admissions to the effect that they never spoke with the officers—were not admissions that could be held against the officers. Wilson disagrees with this result, but cites no authority to support his position. The currency exchange employees' admissions may ultimately affect the credibility of the parties' competing stories about what happened at the currency exchange on that day, but it would be inappropriate to credit either version of the story at this stage of the case.

### 3. Arrest or Stop

Another error in the probable cause analysis, according to Wilson, is that it did not hold that Wilson was arrested at the currency exchange *before* his car was searched. He asserts that the opinion improperly held that he was only detained until he was brought to the police station and that it conflated probable cause between the deceptive practices and cannabis possession charges. This misreads the opinion; it made no determination about exactly when Wilson was arrested because the parties had wildly divergent stories about what happened after the officers

10

arrived at the currency exchange. *See* [177] at 4–9. Determining exactly when the arrest occurred, as opposed to an investigative stop, would require weighing competing versions of events, which is not appropriate at summary judgment. And even if Wilson had been arrested before the search of his car, the officers may have had enough probable cause to arrest him for deceptive practices. Under the officers' version of events, prior to searching Wilson's car, they had been told that his alleged accomplice (Castile) had tried to cash the "exact same check" at two nearby currency exchanges within a short amount of time, that Wilson was going around with Castile cashing checks and had more checks in his car, and that Wilson had insufficient funds in his account.

Wilson fails to show that the summary judgment opinion erred in holding that disputed material facts preclude summary judgment in his favor on the issue of probable cause. Reconsideration is denied.

### C. Malicious Prosecution

All parties were denied summary judgment on Wilson's claim for malicious prosecution for deceptive practices. The officers were denied summary judgment because there were factual disputes over whether they had probable cause for his arrest. [177] at 20. Wilson was denied summary judgment because his only evidence of malice was to infer it from a lack of probable cause for his arrest. [177] at 20–21.

Wilson now argues for reconsideration and summary judgment in his favor, but makes largely the same arguments that he did at summary judgment—mainly that, as a matter of law, there was no probable cause for his arrest for deceptive practices. Repeating unsuccessful arguments does not show grounds for

11

reconsideration, *Caisse Nationale*, 90 F.3d at 1270, and without establishing the lack of probable cause, Wilson cannot be entitled to judgment as a matter of law on his malicious prosecution claim. Wilson also makes a distinction between commencement of a malicious prosecution and its continuance, but even if the officers lacked probable cause to arrest Wilson for deceptive practices, it is not clear that officer Baptiste knew that there were sufficient funds in Wilson's financial account as he was being prosecuted, or that she had the authority to abort the prosecution. And there is no evidence that officer Rife was in any way involved with Wilson or his prosecution following the arrest. Wilson's motion to reconsider denial of summary judgment on the malicious prosecution claim is denied.

### D. Illegal Search and Seizure

Wilson's motion for reconsideration asks for a grant summary judgment in his favor on his illegal search and seizure claims (Counts IV and V). Wilson, however, never moved for summary judgment on these claims; instead, during the parties' summary judgment briefing, he expressly argued that the existence of factual disputes precluded resolution of those claims short of trial. *See* [162] at 11–12, 20–21; [172] at 1, 16. It was only defendants who moved for (and were denied) summary judgment on those claims. Wilson cannot change his position now, or make new arguments that were available to him during briefing on the parties' cross-motions for summary judgment. *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) ("[A] motion for reconsideration is an improper vehicle to introduce evidence previously available or to tender new legal theories."). Wilson's motion for reconsideration on these claims is denied.

### E. Unlawful Detention

The summary judgment opinion denied Wilson's motion and granted the officers' motion for summary judgment on Wilson's unlawful detention claim. [177] at 17–19. Crediting Wilson's version of events, which indicated that he did not receive a bond hearing until about 49 hours after his detention, summary judgment was granted for the officers because Wilson did not identify sufficient facts to establish the causal link required to hold the officers liable for his delayed hearing. *See Ortiz v. City of Chicago*, 656 F.3d 523, 539 (7th Cir. 2011) ("To establish personal liability in a section 1983 action, the plaintiff must show that the officer 'caused the deprivation of a federal right.'") (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

On reconsideration, Wilson argues that a detention over 48 hours is presumptively unreasonable and that the delay was caused by the officers trumping up a second charge for possession of cannabis. These arguments were already addressed at summary judgment. The opinion noted that detentions over 48 hours are presumed unreasonable, but Wilson offered no evidence tying the cannabis charge to the delay or any other evidence tying the officers to the delay. Wilson baldly asserts that both officers caused his delayed hearing by trumping up the additional cannabis charge, but he cites no facts that suggest the delay was from the second charge. According to Wilson, when Baptiste met with him to inform him of the additional cannabis charge, she told him that staffing problems meant that he would not be receiving his hearing that day. Wilson also testified that no one at the police station was taken to court that day. He does not cite to any other evidence

13

that would support finding officer Baptiste responsible for the delay, and he points to no evidence showing that officer Rife even knew of, let alone participated in, the delay or additional charge. His main gripe over the delay actually appeared to be with other unnamed individuals at the police station, who (according to Wilson) refused to take him to court but later capitulated when he demanded medical treatment. That is not enough to show that any officers (much less the defendant officers) actively caused his hearing to be delayed, and Wilson cites no evidence or statements of fact that were overlooked and that would support his claim.

Wilson's arguments about proximate cause, joint and several liability, and non-assertion of an equal protection claim do not address the fact that he lacks sufficient evidence linking the officers to his delayed hearing. He cites *Herzog v. Village of Winnetka, Illinois*, 309 F.3d 1041 (7th Cir. 2002) for the proposition that a plaintiff may recover from an arresting officer for the ensuing "chain of indignities" after an illegal arrest. *Id*. at 1044. *Herzog*, however, merely recognized that "the ordinary rules of tort causation apply to constitutional tort suits." *Id*. Importantly, under the undisputed facts in *Herzog*, the officers had personally subjected the plaintiff to battery, excessive force, and forced, unnecessary blood and urine tests after the plaintiff had been illegally arrested by one of the officers. Their liability was not imposed merely because they had made an illegal arrest, but stemmed from their treatment of the plaintiff. Even under *Herzog*, Wilson must establish a causal link between the officers and his delayed detention. At summary judgment, he did

not set forth evidence to establish that link, and therefore reconsideration on this claim is denied.

### F. Conspiracy

Defendants were granted summary judgment on Wilson's conspiracy claim because Wilson failed to respond to their arguments for summary judgment and failed to identify any evidence suggesting that the officers reached an agreement to violate his rights. [177] at 19–20. For that reason alone, Wilson's motion to reconsider dismissal of the conspiracy claim is denied. *See Caisse Nationale*, 90 F.3d at 1270 ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion.").

Wilson does not address the fact that defendants were granted summary judgment because he failed to step forward with any argument or evidence on this claim, and instead quibbles over a footnote quoting *Scott v. City of Chicago*, 619 Fed. App'x 548 (7th Cir. 2015) for the proposition that "since all of the remaining defendants were public employees, a conspiracy claim under § 1983 'has no role to play.'" [177] at 20 n.18. This footnote was not the basis of the court's holding on the conspiracy claim, as Wilson implies, nor was it inaccurate. Because state actors may be sued directly under § 1983, conspiracy claims involving only state actors are largely superfluous. *See Logan v. Wilkins*, 644 F.3d 577, 583 n. 1 (7th Cir. 2011); *Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Scott v. City of Chicago*, 619 Fed. App'x 548 (7th Cir. 2015). The authority cited by Wilson does not contradict this point, and Wilson is not entitled to reconsideration on the conspiracy claim.

## III.    Conclusion

Wilson's motion for reconsideration, [183], is denied.

ENTER:

                                              Manish S. Shah
                                              United States District Judge

Date:  7/18/16